ALFORD, Judge.
Joy Monteal Carson was injured on October 20, 1980, when the vehicle she was driving was struck from the rear by a car driven by Frank A. Witty. Mrs. Carson and her husband sued Witty, Witty’s liability insurer, A.I.U. Insurance Company, and Mrs. Carson’s carrier of uninsured motorist coverage, State Farm Mutual Automobile Insurance Company.
Plaintiffs settled with defendants Witty and A.I.U. Insurance Company, reserving their rights against State Farm. It was stipulated prior to trial that plaintiffs had recovered $23,380.50 in their settlement, that State Farm would be entitled to credit for the settlement payment, and that the jury would hear the matter only on the issue of quantum. Following trial, the jury returned a general verdict for plaintiffs in the amount of $50,000.00. Plaintiffs thereafter moved for an additur or new trial, alleging that the jury verdict should be increased to at least $66,000.00. The trial judge denied the motions and entered judgment in accordance with the jury’s verdict. Plaintiffs appeal, arguing primarily that the jury verdict was inadequate. Defendant answered the appeal, praying for a decrease in the judgment.[1]
As appropriately noted by this court in Hanzy v. Sam, 385 So.2d 355, 357 (La. App. 1st Cir.1980), writ denied, 386 So.2d 357 (La.1980):
We are once again faced with the troublesome issue of appellate review of a trial court’s general damage award. Much of the trouble exists because of two opposing policy considerations which are manifested in our constitution and statutes. The Constitution empowers appellate courts to review both fact and law on appeal. La. Const. Article 5, § 10(B). However, La.C.C. art. 1934(3) gives trial courts and juries “much discretion” in assessing tort damages. If a trial court’s much discretion is to be given any weight, then appellate review of damage awards must necessarily be limited to the exceptional cases in which the trial court has clearly abused its discretion. But what constitutes “much discretion” and “clear abuse” has not been adequately addressed in our law or in our jurisprudence, probably because of the slippery nature of the concept of general damage awards, i.e., awards for physical and mental pain and suffering, grief, mental anguish, etc.
It is well-settled that before a trial court award may be questioned as inadequate or excessive, the appellate court must first make an articulated finding that the trial court abused its discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). Such a finding must be based on the facts and circumstances peculiar to the case, and not on past cases which appear to be similar to the case before the court. Only after finding an abuse of discretion can the reviewing court determine whether the award is inadequate or excessive. While past cases may be helpful in determining what the proper award should be, only truly similar cases should be relied upon because no two cases are alike. Hanzy, supra.
Dr. Anthony Ioppolo, a neurosurgeon, testified that Mrs. Carson had a ruptured disc, and that he performed a cervical fu *1005 sion on her. Dr. Ioppolo noted that “the back or leg pain or toe numbness” Mrs. Carson was complaining of was not related to the cervical disc problem. Dr. Ioppolo assigned a 10 percent disability rating to Mrs. Carson, noting the rating was simply because of “the fact that a patient has had a disek [sic] rupture, has had surgery performed; it doesn’t imply any particular loss of function.” He also released Mrs. Carson to work full duty.
Mrs. Carson's family physician, Dr. Herbert Dyer, a specialist in rheumatology, testified that prior to the cervical fusion, Mrs. Carson complained of pain and that he ordered traction, tylenol with codeine, flex-aril (a muscle relaxant), and a soft collar for her neck. Dr. Dyer noted that even after the operation, Mrs. Carson complained of pain in the trapezius muscle, which covers from the bottom of the skull over to both shoulders and about half way down the back. He stated that this muscle hurts particularly with neck trouble, but that it can also hurt even without any neck disease. He noted also that Mrs. Carson suffered from osteoarthritis of the neck and cervical spine. However, on cross examination, Dr. Dyer admitted that Mrs. Carson had osteoarthritis prior to the accident. He also testified that he had treated Mrs. Carson in 1973 for chest and back pain, in 1978 for pain in the right shoulder, and in 1980 before the accident, for chest and arm pain. Prior to the accident, Mrs. Carson was taking valium, trancopal (a muscle relaxant), and darvoset (a pain tablet) for her chest pain. Dr. Dyer noted that Mrs. Carson’s symptoms had become more severe after the accident. He also agreed, however, that many of Mrs. Carson’s problems were related to the pressures of her life at home and work. Dr. Dyer testified that as of the date of trial, Mrs. Carson could do part-time and full-time work, and that in his opinion the probabilities were that she would be able to work full-time in the future.
As noted above, plaintiffs contend that the verdict of $50,000.00 was inadequate, and that it should be increased to at least $66,000.00. However, as noted in Hanzy, 385 So.2d at 358:
Our point of course is that there is no manual that one can look to for the answer as to what is shocking enough to constitute an abuse of discretion. Whether a particular award shocks the conscience will depend to a large extent on the philosophical makeup of the reviewing court. But importantly, if a change is to be made, it must not be merely a slight change in the award. It must not be a change merely because the reviewing court would have given a different amount. If any change is made, it must be made because the trial award is so out of line with reality that it is shocking and would constitute an injustice if allowed to stand.
(Emphasis added.)
After a careful review and evaluation of the record, we cannot say that the award made by the jury was an abuse of its discretion. Plaintiffs argue that their economic evidence as to lost wages, both past and future, determines the size of the award for pain and suffering; i.e. subtract the lost wages from the total award and the result is the quantum for pain and suffering, which is allegedly inadequate. We disagree. The record indicates that the trial judge asked plaintiffs’ counsel whether he wanted a general verdict or a verdict form with specific interrogatories as to pain and suffering, lost wages, etc. Obviously, counsel for plaintiffs decided on a general verdict form. It is impossible for this court to know the exact percentage of the jury’s verdict for any specific item of damage. The testimony as to lost wages was subject to cross examination, and we cannot say what weight the jury gave that testimony. The trier of fact, actually hearing and observing the witnesses give live testimony, is in a better position to evaluate credibility than a reviewing court on the intermediate level, which at best can only study the written words of a cold record. Kikendall v. American Progressive Ins. Co., 457 So.2d 53 (La.App. 1st Cir.1984).
*1006 Plaintiffs further argue that it was erroneous for the trial judge to refuse to allow plaintiffs to discuss before the jury the monetary limits of plaintiffs’ uninsured motorist policy. Plaintiffs argue that such error prejudiced the jury in its determination of the damages sustained. We find it unnecessary to decide this issue as a matter of law, because, under the facts of this case, the limits of plaintiffs’ policy should have had no relation to the amount of damages actually sustained by plaintiffs. We find that the trial court’s ruling was not an abuse of its discretion in this case. Thus, plaintiffs’ argument is without merit.
For the above and foregoing reasons, the judgment of the trial court in conformity with the jury verdict is affirmed in all respects at appellants’ costs.
AFFIRMED.

. State Farm failed to brief this issue; specifications of error not briefed are considered abandoned. Uniform Rules of the Courts of Appeal, Rule 2-12.4.